UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN CORRELL,

       Plaintiff,                      CIVIL ACTION NO. 07-12110

    v.                                  DISTRICT JUDGE GERALD D. ROSEN

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

### II. Background

On January 30, 2006, plaintiff filed an application for Social Security Disability Insurance Benefits due to "[d]eteriorating disks in lower back and sciatic nerve problems in left leg," with a disability onset date of March 24, 2005. (Tr. 44-46, 57) Plaintiff completed high

-1-

school and has a work history including employment as a metal dye maker and gauge control technician.  (Tr. 18, 59-59, 64)

The Social Security Administration (SSA) denied plaintiff's claims on initial review. (Tr. 28-31)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 32) The hearing was held on August 28, 2006, before ALJ Bennett Engelman.  (Tr. 205-236) Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On October 12, 2006, the ALJ issued a decision denying plaintiff's claim.  (Tr. 11-20) The ALJ determined that the medical evidence established that plaintiff is severely impaired by "degenerative disc disease of the lumbar spine" (Tr. 15), but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" of the Social Security Regulations.  (Tr. 15)  In addition, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform:

> a significant range of sedentary work activity that requires lifting/carrying and pushing/pulling up to ten pounds, standing/walking for at least two hours and sitting for up to six hours during an eight-hour work day.  In addition, the claimant is capable of performing work activity that requires frequent balancing and occasional climbing (no ropes, ladders or scaffolds), stooping, kneeling, crouching and crawling. [Tr. 15-16] [citations omitted]

The ALJ also found that, although plaintiff could not perform her past relevant work:

> Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations

> with jobs existing in significant numbers in the national economy.
> [Tr. 18]

Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 19-20)  Plaintiff was 46 years-old at the time of the ALJ's decision. (Tr. 18)

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council. (Tr. 8)  The Appeals Council denied the request on April 6, 2007. (Tr. 3-5)  The ALJ's decision thus became the final decision of the Commissioner.

On May 16, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for summary judgment.  Plaintiff claims that the ALJ erred in assessing plaintiff's credibility, evaluating the opinion of a treating physician, and consequently in forming the hypothetical question posed to the VE.  The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity. Next the claimant must demonstrate that she has a
> "severe impairment." A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment. If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ and the VE had the following discussion:

> ALJ: Let's assume that this 46-year-old claimant with a high
> school degree and journeyman skills obtained is limited to
> sedentary work. First of all would any of the skills transfer to
> sedentary work?
>
> VE: Yes. She has some basic computer skills, math skills. Those
> would transfer to some semi-skilled, sedentary work.

> ALJ: And can you tell me what those jobs might – couple of job categories please?
>
> VE: Those are broken up quite a bit, all the different clerical positions. But there would be billing and posting clerks. Those number approximately 6,500 in the region, which is the lower peninsula of the state of Michigan.
>
> ALJ: And is that, is your testimony consistent with the Dictionary of Occupational Titles?
>
> VE: Yes, sir. There would also be additional bookkeeping clerks, numbering approximately 2,000 in the region.
>
> ALJ: Okay, bookkeeping, that's slightly different, but similar in nature to entering data from results she got from doing the actual measurements and then entering it in?
>
> VE: Correct.
>
> ALJ: That's why it's transferable?
>
> VE: Yes.
>
> ALJ: Okay, you can stop there. [Tr. 231-232.]

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security,

368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002). In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of her limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her arguments that ALJ erred in evaluating the opinion of a treating physician and in assessing her credibility.

### A. Treating Physician Opinions

Plaintiff's argues that the ALJ erred in failing to accord controlling weight to the opinion of one of her treating physicians. Plaintiff thus invokes the "treating physician" rule. The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Indeed, 20

C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

Plaintiff argues that the ALJ failed to give the appropriate weight to the opinion of one of her treating physicians, Dr. James Walter. In a "Statement of Employee's Physician Form" dated January 26, 2006, Dr. Walter identified plaintiff as having chronic lower back pain and sciatica, right lateral disc herniation. (Tr. 140) While the causes of the disability were unknown, Dr. Walter stated that his diagnosis was supported by objective findings of low back pain and radiculopathy into plaintiff's leg. (Tr. 140) Dr. Walter recommended physical therapy, medication, and steroid injections. (Tr. 140-141) In a "Medical Source Statement" dated August 25, 2006, Dr. Walter stated that plaintiff could occasionally lift less than ten pounds, frequently lift less than ten pounds, stand or walk for less than two hours in every eight hours, and sit continuously less than six hours in every eight hours. (Tr. 198) Plaintiff also had severe limitations in her ability to push or pull in both her upper and lower extremities. (Tr. 198) Dr. Walter further opined that plaintiff "can't do to (sic) much at all because of back and leg

problems and medication" (Tr. 198) and that plaintiff's impairments would disrupt her forty hours out of every one hundred and sixty hours. (Tr. 198) Throughout Dr. Walter's treatment of plaintiff, Dr. Walter has advised plaintiff to stay off work or restricted plaintiff from working. (Tr. 135, 174-175, 198)

In the ALJ's decision in this case, the ALJ addressed Dr. Walter's opinion:

> Specifically, the objective clinical evidence in this matter demonstrates rather mild findings in terms of claimant's lower back and left lower extremity pain. Furthermore the medical condition has remained essentially the stable. Therefore, the undersigned is unable to accord significant weight to Dr. Walter's opinion. [Tr. 17] [citations omitted]

The ALJ also noted that plaintiff's pain symptoms continue to be treated with "conservative measures." (Tr. 17)

To the extent Dr. Walter opines that plaintiff is disabled from working, the ALJ may disregard that opinion. An ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work." The regulations specifically provide that such a statement is not a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R. §§ 404.1527(a)(2), 404.1527(e)(1); 416.927(a)(2); 416.1527(e)(1). The question of whether a claimant is disabled is reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(e)(1); 20 C.F.R.416.927(e)(1).

Regarding Dr. Walter's opinion on plaintiff's specific physical restrictions, the ALJ offered several good reasons for rejecting it. First, as found by the ALJ, "the objective clinical evidence in this matter demonstrates rather mild findings in terms of claimant's lower back and

left lower extremity pain." (Tr. 17)  As noted above, the treating physician's rule requires that the treating physician's opinion be supported by objective medical evidence and consistent with the record as a whole before it is considered controlling.  Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004).  In this case, plaintiff underwent an MRI of the lumbar spine on June 3, 2005 and, while that MRI revealed post-operative changes at the L5-S1 level, a possible small L2-3 disc herniation and mild disc protrusion at the L4-5 level, there were "no findings to suggest recurrent disc herniation." (Tr. 101)  Moreover, a review of the MRI by Dr. Wilbur Boike found "no clear-cut evidence of nerve root compression" (Tr. 107) and a review of the MRI by Dr. Lisa Guyot found mild stenosis, but no acute disc herniation. (Tr. 112-113)  Other medical evidence in the record, includes radiological studies of the plaintiff's lumbar spine, performed on December 7, 2005, that revealed evidence of a stable L5-S1 fusion and no evidence of malalignment fracture or dislocation. (Tr. 195-197)  Furthermore, an EMG of the plaintiff's left lower extremity, performed December 14, 2005, revealed essentially normal findings, with no evidence of radiculopathy, plexopathy or mononeuropathy (Tr. 122-123) and an exam by Dr. Boike, performed on August 9, 2005, revealed normal strength in both of plaintiff's lower extremities, though plaintiff's lumbosacral spine flexibility was reduced. (Tr. 102)

In addition to relying on the lack of objective clinical evidence supporting plaintiff's claim, the ALJ also relied in the fact that plaintiff's "medical condition has remained essentially stable." (Tr. 17)  For example, on January 18, 2006, the date of the last medical examination in the record, Dr. Matthew W. Smuck found "There is a little radiographic change on her MRIs in

this interim with the exception of increased postcontrast intensity at the L5-S1 interspace, and L5 vertebral body." (Tr. 116)  The lack of improvement in plaintiff's condition could have been because of her own lack of effort in treatment.  Dr. Boike, after expressing surprise that plaintiff had not responded to any interventions, noted that there "appears to be an element of active guarding." (Tr. 102)  Likewise, plaintiff's physical therapist noted that plaintiff's behavior was inconsistent with her objective signs (Tr. 105) and that the objective measures of her therapy "were inconsistent due to self limiting effort." (Tr. 103)

As discussed above, the ALJ noted that plaintiff's pain symptoms continue to be treated with "conservative measures."  (Tr. 17)  An ALJ considers use of medication and other treatment when evaluating the intensity and persistence of a plaintiff's symptoms, including pain.  20 C.F.R. 404.1529(c)(3)(iv)-(v).  In this case, Dr. Boike specifically opined that it was not clear that plaintiff would necessarily respond to spine surgery.  (Tr. 102)  Plaintiff did go through physical therapy (Tr. 125-129, 130-131), but she reported only 20% improvement.  (Tr. 103)  However, the physical therapist noted that the objective measures of plaintiff's physical therapy were inconsistent due to plaintiff's self limiting effort.  (Tr. 103)  Other treatment included pain medication, a back brace, home exercise and injection therapy.  (Tr. 134, 140-141)  Thus, all the doctors in this case and plaintiff were content with a conservative course of treatment.  Plaintiff failed to take full advantage of the prescribed physical therapy.  Such conservative treatment and plaintiff's level of effort in the prescribed physical therapy suggest that plaintiff's impairments do not rise to the level reflected in Dr. Walter's opinion.

Viewing the record as a whole, substantial evidence exists to support the ALJ's rejection of Dr. Walter's opinions. The objective medical evidence in this matter demonstrates both that plaintiff's lower back and left lower extremity pain were mild, and that her medical condition has remained essentially stable since 2005. The actual treatment recommended by Dr. Walter and others, and which was only sometimes followed by plaintiff, was conservative and seemingly inconsistent with Dr. Walter's opinion.

### B. Plaintiff's Credibility

The ALJ determined that plaintiff's testimony was not substantially credible based on the objective medical evidence provided by treating physicians." (Tr. 17) An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Id. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also Walters, supra, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

In this case, plaintiff testified that she had constant sharp stabbing pains in her left leg and that she falls down because of her legs three to four times a week. (Tr. 215-217) Plaintiff also testified that she has back pain and that she can only stand for approximately twenty minutes and sit for thirty minutes. (Tr. 219) Plaintiff further testified that she can only lift a gallon of milk, walk twenty to twenty-five minutes, and drive for short distances. (Tr. 219-220) According to plaintiff, she has trouble sleeping at night and usually takes at least two hour-long naps a day. (Tr. 222)

Plaintiff's testimony is not corroborated by the medical evidence. As discussed above, while the medical evidence shows the existence of plaintiff's impairment, it does not establish that plaintiff is restricted from physical activities to the extent she alleges. In fact, given the results of the MRI and EMG, plaintiff's conservative treatment and the findings of Dr. Boike, Dr. Guyot and Dr. Smuck discussed above, the medical evidence actually contradicts plaintiff's complaints and, thus, weakens her credibility. Moreover, the physical RFC assessment performed by the state agency physician directly conflicts with plaintiff's testimony. (Tr. 176-183) Plaintiff's testimony was consistent with Dr. Walter's opinion, but that opinion was properly discounted by the ALJ, as discussed above. Substantial evidence exists to support the ALJ's credibility determination. Plaintiff's testimony is not corroborated by the medical evidence, nor properly weighted opinions of medical sources. A plaintiff's statements regarding her pain or other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case that is all that plaintiff offers.

**V. Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 17, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 17, 2008.

               s/Jane Johnson
               Case Manager to
               Magistrate Judge Virginia M. Morgan